**WOODARD'S ADM'R**

v.

**YELLOW TRANSIT FREIGHT LINES, Inc., et al.**

Court of Appeals of Kentucky.

Jan. 15, 1954.

Rehearing Denied March 12, 1954.

Harold R. Marquette, Roscoe Conkling, Louisville, for appellant.

Richard McIntosh, Woodward, Hobson & Fulton, Louisville, for appellees.

MILLIKEN, Justice.

Whether the trial judge properly directed a verdict for the defendant at the close of the plaintiff-appellant's testimony is the only question presented on this appeal.

On his way home from school on November 14, 1951, Norman Woodard, eight years of age, was killed by coming into contact with a truck belonging to the Yellow Transit Freight Lines, Inc., and driven by James A. Murphy, at the intersection of Ninth and Madison Streets, Louisville, Kentucky. The truck depot is located in the southwest corner of Ninth and Madison Streets, with an entrance from Ninth Street and another one on Madison Street. From the evidence given, this decedent and many other little children were returning from school, walking northwardly on the west side of Ninth Street and toward Madison Street. The trailer truck was proceeding northwardly on Ninth Street and turned left into Madison Street in order to make another left turn into the depot from Madison Street. The truck driver had seen the homeward-bound children on the sidewalk, and purposely refrained from turning his forty-foot truck across the sidewalk into the Ninth Street entrance of the truck depot. He slowed or stopped his truck at the intersection of Ninth and Madison to permit

862

a southbound vehicle to pass, then slowly turned left of the center of the intersection, as required by state law, KRS 189.330(1), and proceeded slowly around the corner into Madison. Norman was crushed by the front dual wheel at the rear of the truck.

The Louisville police quickly appeared and took measurements and photographs of the site of the accident and the truck. Norman's body lay in the crosswalk ten feet five inches north of the south curbline of Madison Street, which is thirty-six feet wide at this point, and the tire marks of the truck were the same distance from the curbline. The photographs reveal a smudge on the side of the truck immediately in front and above the left rear dual wheel, a mark on the tire of that wheel, and a blood mark on the surface of the street. On the basis of all testimony, except that discussed hereafter, the driver of the truck clearly had not been negligent.

When seven-year old Dorothy Mosby, the companion of little Norman on the fateful day, took the witness stand she testified fairly well until asked to describe the accident when she became utterly silent and no amount of blandishments or urgings could elicit a sound. She apparently experienced some sort of an emotional block which prevented her from describing or possibly recalling her frightful experience. She did say the front of the truck hit Norman, but would neither say what she meant by "front" nor make any other statement which would enable the court and the jury to infer the basis of her opinion. Appreciating the suggestibility of young children, the learned trial judge refused to allow the jury to consider this testimony, and, there being no other evidence of negligence, he properly instructed the jury to return a verdict for the defendant.

We have combed the record in this case and find no lack of care on the part of the driver of the truck. In a 1953 annotation to Chapple v. Sellers, 365 Pa. 503, 76 A.2d 172, 30 A.L.R.2d 1, a case strikingly similar to the case at bar, it is pointed out that the operator of a motor

vehicle is not an insurer of the safety of young children; he owes them a great or high degree of care and, in the case at bar, we believe, as did the trial judge, that that duty had been faithfully discharged.

The judgment is affirmed.